UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 21-14329-CIV-CANNON

**JPJ SERVICES LLC**,

    Plaintiff,
v.

**NEW HAMPSHIRE INSURANCE COMPANY**,

    Defendant.
_____/

## ORDER ON MAGISTRATE'S REPORT AND RECOMMENDATION

**THIS CAUSE** comes before the Court upon Magistrate Judge Shaniek M. Maynard's Report and Recommendation (the "Report") [ECF No. 19], entered on February 16, 2022. The Report recommends denial of Defendant's Motion to Dismiss Plaintiff's Complaint ("Motion to Dismiss") [ECF No. 5]. On March 2, 2022, Defendant filed Objections to the Report [ECF No. 20]. The Court has conducted a de novo review of the Report, Defendant's Objections, and the full record. Following that review, the Court respectfully **REJECTS** the Report [ECF No. 19] and **GRANTS** Defendant's Motion to Dismiss [ECF No. 5].

### FACTUAL & PROCEDURAL BACKGROUND

According to the Complaint, Defendant New Hampshire Insurance Company ("New Hampshire") issued Policy No. 5671331 (the "Policy") to homeowners Harry and Marylou Schaffer to provide coverage to the Schaffers' residential property [ECF No. 1-2 p. 7]. After the Schaffers' property was damaged by Hurricane Irma, Marylou Schaffer executed an Assignment of Benefits to Plaintiff, JPJ Services, LLC ("JPJ") on June 4, 2020, to make repairs to the Schaffers' home [ECF No. 1-2 pp. 9–11]. The Assignment of Benefits—filed on the docket as an

attachment to JPJ's Complaint—does not contain or reference a cost estimate for the repairs to the home. Instead, one day after the Assignment was executed, on June 5, 2020, Elite Claims Consultants issued a six-page cost estimate, quoting a total cost of $136,853.11 [ECF No. 1-4].

On June 24, 2021, JPJ filed suit in state court for a single count of breach of contract based upon New Hampshire's alleged failure to pay JPJ the assigned insurance proceeds after JPJ made repairs to the Schaffers' home [ECF No. 1-2 pp. 6–8]. On August 11, 2021, New Hampshire removed the suit to federal court on the basis on diversity jurisdiction [ECF No. 1].

New Hampshire thereafter filed the instant Motion to Dismiss [ECF No. 5], arguing that JPJ "lacks sufficient standing to bring and/or maintain this legal action" because the Assignment of Benefits agreement is "invalid and unenforceable for violating the legal requirements set forth in [Section] 627.7152" [ECF No. 5 p. 2 (referencing Fla. Stat. § 627.7152)]. Specifically, New Hampshire argues that the Assignment of Benefits fails to contain a "written, itemized, per-unit cost estimate of the services to be performed by the assignee" as well as a "provision that allows the assignor to rescind the assignment agreement without a penalty or fee by submitting a written notice of rescission signed by the assignor to the assignee"—both requirements of Florida's regulation of assignment law. *See* Fla. Stat. § 627.7152(2)(a) (setting forth seven requirements for a valid assignment agreement); *id.* § 627.7152(2)(a)(2), (2)(a)(4) [ECF No. 5 pp. 4–7]. New Hampshire also moves for dismissal based on JPJ's failure to join Harry Schaffer as an indispensable party [ECF No. 5 pp. 7–9].

In Response, JPJ contends that Section 627.7152(2)(a)(4) "does not require the [cost] estimate to *literally* be contained within the Assignment itself," arguing that it fully complied with the statute by providing the cost estimate as an attachment to New Hampshire within three business days of signing the Assignment of Benefits [ECF No. 14 p. 5 (emphasis in original)]. JPJ further

argues that because New Hampshire is a non-party to the Assignment of Benefits, it "therefore has no standing to challenge its validity or enforceability" [ECF No. 14 p. 9]. Last, on the issue of whether the case should be dismissed for failure to join Harry Schaffer as in indispensable party, JPJ argues that "[d]iscovery will show that Harry Schaffer intended to be bound to the Assignment through the signature of his wife" [ECF No. 14 p. 10].

New Hampshire did not file a Reply.

On February 16, 2022, the Magistrate entered a Report recommending that New Hampshire's Motion to Dismiss be denied [ECF No. 19]. As to the question of whether the Assignment of Benefits is invalid for failing to contain a cost estimate, the Report finds that New Hampshire "provided no legal authority or support for the proposition that the estimate must be contained within the Assignment itself," and that, in any event, the separate cost estimate could be considered as part of the Assignment under the "contemporaneous instrument rule" [ECF No. 19 p. 7]; *see Wilson v. Terwillinger*, 140 So. 3d 1122, 1124 (Fla. Dist. Ct. App. 2014). On the issue of whether Harry Schaffer must be joined as an indispensable party, the Report notes that, although Harry Schaffer did not sign the Assignment of Benefits, the Complaint adequately alleges that both the Schaffers have "either actually or equitably assigned the insurance benefits which they are entitled to under the Policy to Plaintiff, by writing, parol, or other course of conduct" [ECF No. 19; ECF No. 1-2 p. 7, ¶ 9]. Based on this allegation, the Report concludes that, "as pled, Mr. Schaffer may have provided written consent to the Assignment by means other than signing the Assignment leading to a finding of an actual or equitable assignment under Florida law" [ECF No. 19 p. 10]; *see SourceTrack, LLC v. Ariba, Inc.*, 958 So. 2d 523, 526 (Fla. Dist. Ct. App. 2007) ("A court may find an equitable assignment where necessary to effectuate the parties' plain intent or to avoid injustice."). The Report does not address New Hampshire's contention

that the Assignment failed to include the language required by Section 627.7152(2)(a)(2) "that allows the assignor to rescind the assignment agreement without a penalty or fee by submitting a written notice of rescission."[1]

New Hampshire timely filed its Objections to the Report [ECF No. 20]. New Hampshire argues that because "Section 627.7152 of the Florida Statutes is clear and unambiguous, the language of the statute must be given its plain and ordinary meaning as the words are defined in the dictionary and must be applied as written" [ECF No. 20 p. 3]. This means, as New Hampshire argues, that the word "contain" as used in the statute requires a cost estimate to be in the four corners of the assignment agreement itself [ECF No. 20 p. 3]. New Hampshire also reiterates a second defect with the Assignment—that it does not contain the mandatory language stating that the Insureds may rescind the assignment agreement "by submitting a written notice of recission by the assignor to the assignee" as required by Section 627.7152(2)(a)(2) [ECF No. 20 p. 5].

The Report is ripe for adjudication.

## DISCUSSION

Defendant's Motion to Dismiss should be granted because the Assignment of Benefits upon which Plaintiff premises its suit fails to comply with two mandatory requirements of Section 627.7152(2)(a) and therefore is invalid and unenforceable under Section 627.7152(2)(d). Fla. Stat. § 627.7152(2)(a), (d).

---

[1] The issue of whether the Assignment contains the recission language as required by Section 627.7152(2)(a)(2) is distinct from the separate question, undisputed in this case [ECF No. 20 p. 5], whether the Assignment contains a provision that allows the Insureds as Assignors to rescind the Assignment without penalty or fee as required by Section 627.7152(2)(a)(6). *See* Fla. Stat. § 627.7152(2)(a)(2), (6).

Under Section 627.7152(2)(a), an assignment agreement must comply with seven requirements, and if it does not, it is "invalid and unenforceable." Fla. Stat. § 627.7152(2)(d). The seven requirements are listed below, with the two at issue in this case marked in italicized text.

(2)(a) An assignment agreement must:

1. Be in writing and executed by and between the assignor and the assignee.

2. Contain a provision that allows the assignor to rescind the assignment agreement without a penalty or fee *by submitting a written notice of rescission signed by the assignor to the assignee* within 14 days after the execution of the agreement, at least 30 days after the date work on the property is scheduled to commence if the assignee has not substantially performed, or at least 30 days after the execution of the agreement if the agreement does not contain a commencement date and the assignee has not begun substantial work on the property.

3. Contain a provision requiring the assignee to provide a copy of the executed assignment agreement to the insurer within 3 business days after the date on which the assignment agreement is executed or the date on which work begins, whichever is earlier. Delivery of the copy of the assignment agreement to the insurer may be made:

    a. By personal service, overnight delivery, or electronic transmission, with evidence of delivery in the form of a receipt or other paper or electronic acknowledgment by the insurer; or

    b. To the location designated for receipt of such agreements as specified in the policy.

4. *Contain a written, itemized, per-unit cost estimate of the services to be performed by the assignee.*

5. Relate only to work to be performed by the assignee for services to protect, repair, restore, or replace a dwelling or structure or to mitigate against further damage to such property.

6. Contain the following notice in 18-point uppercase and boldfaced type:

    YOU ARE AGREEING TO GIVE UP CERTAIN RIGHTS YOU HAVE UNDER YOUR INSURANCE POLICY TO A THIRD PARTY, WHICH MAY RESULT IN LITIGATION AGAINST YOUR INSURER. PLEASE READ AND UNDERSTAND THIS DOCUMENT BEFORE SIGNING IT. YOU HAVE THE RIGHT TO CANCEL THIS AGREEMENT WITHOUT

> PENALTY WITHIN 14 DAYS AFTER THE DATE THIS AGREEMENT IS EXECUTED, AT LEAST 30 DAYS AFTER THE DATE WORK ON THE PROPERTY IS SCHEDULED TO COMMENCE IF THE ASSIGNEE HAS NOT SUBSTANTIALLY PERFORMED, OR AT LEAST 30 DAYS AFTER THE EXECUTION OF THE AGREEMENT IF THE AGREEMENT DOES NOT CONTAIN A COMMENCEMENT DATE AND THE ASSIGNEE HAS NOT BEGUN SUBSTANTIAL WORK ON THE PROPERTY. HOWEVER, YOU ARE OBLIGATED FOR PAYMENT OF ANY CONTRACTED WORK PERFORMED BEFORE THE AGREEMENT IS RESCINDED. THIS AGREEMENT DOES NOT CHANGE YOUR OBLIGATION TO PERFORM THE DUTIES REQUIRED UNDER YOUR PROPERTY INSURANCE POLICY.
>
> 7. Contain a provision requiring the assignee to indemnify and hold harmless the assignor from all liabilities, damages, losses, and costs, including, but not limited to, attorney fees, should the policy subject to the assignment agreement prohibit, in whole or in part, the assignment of benefits.

Fla. Stat. § 627.7152(2)(a)(1)–(7) (italics added). According to the statute, "[a]n assignment agreement that does not comply with this subsection is *invalid and unenforceable*." Fla. Stat. § 627.7152(2)(d) (emphasis added).

The Assignment in this case fails to comply with two of those requirements: (1) the requirement that assignment "[c]ontain a provision that allows the assignor to rescind the assignment agreement without a penalty or fee by submitting a written notice of recission by the assignor to the assignee" as required under Section 627.7152(2)(a)(2), and (2) the requirement that the assignment "[c]ontain a written, itemized, per-unit cost estimate of the services to be performed by the assignee" as required under Section 627.7152(2)(a)(4).

As to the first requirement, JPJ does not dispute that the Assignment lacks the mandatory recission language required by Section 627.7152(2)(a)(2).[2] That is indeed the case; a review of the Assignment reveals that it contains portions of the recission language required by Section

---

[2] JPJ did not respond to New Hampshire's challenge on this point in its Response. "When a party fails to respond to an argument or otherwise address a claim, the Court deems such an argument or claim abandoned." *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014).

627.7152(2)(a)(2), but that it does not contain the required, specific language stating that the Insureds may rescind the assignment agreement "by submitting a written notice of recission by the assignor to the assignee." Fla. Stat. § 627.7152(2)(a)(2).

As to the second requirement, JPJ advances a plausible theory that it materially complied with the statute by submitting the cost-estimate as a separate attachment to New Hampshire the day after the Assignment of Benefits was executed [ECF No. 14 pp. 4–6], but that argument contravenes the plain meaning of the word "contain" as used in Section 627.7152(2)(a)(4). Although the statute does not define the word "contain," it is "well established that 'where a statute does not specifically define words of common usage, such words are construed in their plain and ordinary sense.'" *State v. Brake*, 796 So.2d 522, 528 (Fla. 2001) (quoting *Shepard v. State*, 259 So. 3d 701, 705 (Fla. 2018)).

Here, the plain and ordinary meaning of the word "contain" means that a cost estimate must be contained within the assignment agreement itself. The American Heritage Dictionary, for example, defines the word "contain" to mean "have within," or to "hold or keep within limits." *Contain*, *American Heritage Dictionary of the English Language* (5th ed. 2018). Similarly, Webster's New World College Dictionary defines "contain" to mean "to hold," "to have in it," and to "hold, enclose, or include." *Contain*, *Webster's New World College Dictionary* (5th ed. 2010). Likewise, Merriam-Webster's Collegiate Dictionary defines "contain" to mean "to hold together" and to "keep within limits." *Contain*, *Merriam-Webster's Collegiate Dictionary* (11th ed. 2020). The Court finds no ambiguity in the meaning of the word "contain" as used in Section 627.7152(2)(a)(4) and must enforce the statute "according to its terms." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241(1989) (citation omitted).

Having determined that the ordinary meaning of the term "contain" as used in Section 627.7152(2)(a)(4) requires the cost estimate to be included within the assignment itself, the record is clear that the Assignment at issue here does not comport with that requirement [*see* June 4, 2020 Assignment of Benefits, ECF No. 1-2 pp. 9–11 (showing assignment of all insurance benefits to JPJ without reference to any cost estimate for the work to be performed)]. Instead, the cost estimate—prepared by Elite Claims Consultants, a third-party and non-signatory to the Assignment—was created on June 5, 2020, one day after the Assignment had been executed, and then was sent to New Hampshire as a separate document appended to the previously executed Assignment [ECF No. 1-4; *see also* JPJ's Amended Complaint, ECF No. 1-2 p. 7, ¶ 10 (alleging that New Hampshire "was promptly and timely provided with documentation of Plaintiff's assignment of benefits, estimate, and a written notice of intent to initiate litigation")]. As New Hampshire correctly notes, "the estimate had not even been created yet and did not exist at the time the alleged AOB was executed" [ECF No. 20 p. 3]. Nor does the Assignment contain any reference to a separate cost estimate, stating instead: "[t]his is the entire agreement between the Parties and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written, of the Parties" [ECF No. 1-2 p. 10]. In other words, while the cost-estimate ultimately was prepared and forwarded to New Hampshire, it was not "contained" in the Assignment itself as required by the terms of Section 627.7152(2)(a)(4). The net result of that deficiency—again pursuant to the terms of Florida law—is that the assignment is "invalid and unenforceable." Fla. Stat. § 627.7152(2)(d). *See Apex Roofing & Restoration, LLC v. Sec. First Ins. Co.*, No. 2020-10810-CIDL, 2020 WL 4726815, at *1 (Fla. Cir. Ct. Aug. 11, 2020) (dismissing complaint when the assignment of benefits failed to contain an itemized cost estimate); *SFR Services, LLC v. First Protective Ins. Co.*, No. 2021CA002316, 2021 WL 5033399, at *1 (Fla. Cir.

Ct. Oct. 19, 2021) (dismissing complaint where the mandatory rescission language and the itemized cost estimate were not contained in the assignment of benefits).

JPJ's argument that New Hampshire itself lacks standing to challenge the validity of the assignment is unavailing. Under Florida law, "a person not a party to nor in privity with a contract has no right to enforce it." *Gallagher v. Dupont*, 918 So. 2d 342, 347 (Fla. Dist. Ct. App. 2005). Here, however, New Hampshire does not seek to enforce the Assignment of Benefits; rather, New Hampshire, as a defensive matter, challenges JPJ's standing to bring this suit against it. An assignment of benefits "is not merely a condition precedent to maintain an action on a claim held by the person or entity who filed the lawsuit." *Progressive Express Insurance Company v. McGrath Community Chiropractic*, 913 So. 2d 1281, 1285 (Fla. Dist. Ct. App. 2005). "Rather, it is the basis of the claimant's standing to invoke the processes of the court in the first place." *Id.*; *see also Soflo Environmental, LLC v. United Property & Cas. Ins. Co.*, No. 50-2021-SC-003139, 2021 WL 2934891, at *2 (Fla. Co. Ct. July 08, 2021) (dismissing complaint for failure to contain a cost estimate and concluding that, "[w]here the mandatory language of Fla. Stat. § 627.7152 invalidates the Assignment of Benefits contract and renders it unenforceable, the Plaintiff lacks standing to sue the Defendant").

For these reasons, because of the facial deficiencies of the Assignment of Benefits pursuant to the plain terms of Section 627.7152(2)(a)(4), and because of the further requirement in Section 627.7152(2)(d) that renders "invalid and unenforceable" any "assignment agreement that does not comply with this subsection," Fla. Stat. § 627.7152(2)(d), JPJ does not currently stand in the position of Assignors as alleged in the Complaint and therefore cannot premise its cause of action

upon the invalid assignment [ECF No. 1–2 p. 7, ¶ 9].[3] The Florida Legislature saw fit to require certain prerequisites for a valid assignment agreement, and the Court is not at liberty to rewrite the terms of the statute. *See generally Pereira v. Sessions*, 138 S. Ct. 2105, 2114 (2018) (adhering to statutory text in interpretation of specific information to be specified in "notice to appear" as defined in Immigration and Nationality Act); *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021) (further adhering to statutory text in requiring "notice to appear" to be issued in a single document containing all of the required information). The Complaint is due to be dismissed.

## CONCLUSION

For the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation [ECF No. 19] is **REJECTED**.
2. New Hampshire's Motion to Dismiss [ECF No. 5] is **GRANTED**.
3. JPJ's Complaint [ECF No. 1–2 pp. 6–8] is **DISMISSED WITH PREJUDICE** because any amendment under the current assignment of benefits [ECF No. 1–2 pp. 9–11] would be futile.[4]
4. The Clerk is directed to **CLOSE** this case.
5. The parties' Joint Mediation Notice and Request for Virtual Mediation [ECF No. 29] is **DENIED AS MOOT**.

---

[3] Having concluded that the Assignment of Benefits is invalid and unenforceable under Section 627.7152, the Court need not address New Hampshire's argument that JPJ failed to join Harry Schaffer as an indispensable party [ECF No. 5 pp. 7–9].

[4] The Court makes no comment on JPJ's ability to secure a compliant assignment in the future or to otherwise seek to vindicate its interests in another action.

CASE NO. 21-14329-CIV-CANNON

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 3rd day of June 2022.

                                                **AILEEN M. CANNON**
                                                **UNITED STATES DISTRICT JUDGE**

cc:    counsel of record